### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRANDON CORBETT, by and through his POA, LOUISE CORBETT,** | : | |
| **Plaintiff** | : | **No. 3:20-cv-01530-CCC** |
| **v.** | : | |
| **COUNTY OF MONROE, MONROE** | : | |
| **COUNTY PRISON BOARD,** | : | **CIVIL ACTION – LAW** |
| **JOHN/JANE DOES (fictitious names for** | : | |
| **Monroe County Prison Board members),** | : | |
| **WARDEN GARY HAIDLE, OFFICER** | : | |
| **STEPHEN WILSON, JOHN/JANE** | : | |
| **DOES (fictious names for MCCF** | : | |
| **employees), JONATHAN R. WOLF,** | : | |
| **COMMONWEALTH OF** | : | |
| **PENNSYLVANIA DEPARTMENT OF** | : | |
| **TRANSPORTATION and JOHN/JANE** | : | |
| **DOES (fictitious names for parties** | : | |
| **responsible for maintaining Route 209)** | : | |
| **Defendants.** | : | |

## AMENDED COMPLAINT

AND NOW, comes the plaintiff, Brandon Corbett, by and through his power of attorney, Louise Corbett ("Plaintiff"), by and through his attorneys, Cooper Schall & Levy, and hereby complains against the above-captioned defendants as follows:

**I.    PARTIES**

1.      Plaintiff, Brandon Corbett ("Plaintiff" or "Corbett"), by and through his Power of Attorney, Louise Corbett, is an adult individual currently residing at 1521 Oak Lane, Bushkill, PA 18324 and is a citizen of the Commonwealth of Pennsylvania.

2.      Defendant, County of Monroe, is a municipal entity operating under the laws of the Commonwealth of Pennsylvania which maintains its principal offices at 610 Monroe Street, Suite 126, Stroudsburg, PA 18360.   Monroe County is the entity with ultimate responsibility for purposes of making  policy decisions regarding the Monroe County Correctional Facility ("MCCF").

3.      Defendant, Monroe County Prison Board ("Prison Board") is a governmental and/or corporate entity, which continuously and systematically maintains the Monroe County prison system, including specifically, the policies, edicts, well-settled courses of conduct, customs and/or practices at the Monroe County Correctional Facility ("MCCF"), in the County of Monroe, with its principal place of business at 4250 Manor Drive, Stroudsburg, PA 18360. The Prison Board is, and at all relevant times was the authorized decisionmaker for the County of Monroe, possessing authority to establish municipal policy with regard to MCCF.  Defendants County of Monroe and Monroe County Prison Board are collectively referred to as the "Monroe County Defendants".

4.      Defendant, Prison Board John/Jane Doe Defendants, (fictitious names for members of the Prison Board), are unidentified adult individuals who continuously and systematically maintained and/or are responsible for the operations of MCCF, including specifically, the policies, edicts, well-settled courses of conduct, customs and/or practices at MCCF, with their principal place of business located at 4250 Manor Drive, Stroudsburg, PA 18360.

5.      Defendant, Warden Gary Haidle, is an adult individual who continuously and systematically maintained and/or was responsible for the operations of MCCF, including specifically, the policies, edicts, well-settled courses of conduct, customs and/or practices  at the MCCF, with his principal place of business located at 4250 Manor Drive, Stroudsburg, PA 18360.  Plaintiff is suing this Defendant in his individual capacity.

6.      Defendant, Officer Stephen Wilson, is an adult individual who, at all relevant times, was employed by MCCF, and carried out, adhered to and/or followed the policies, well-settled courses of conduct, edicts, customs and/or practices of MCCF, with his principal place

of business located at 4250 Manor Drive, Stroudsburg, PA 18360.  Plaintiff is suing this Defendant in his individual capacity.

7.      Defendant, MCCF John/Jane Doe Defendants (fictitious names for police officers, guards and/or other MCCF personnel), are unidentified adult individuals who, at all relevant times, were employed by MCCF, and carried out, adhered to and/or followed the policies, well-settled courses of conduct, edicts, customs and/or practices of MCCF, with their principal place of business located at 4250 Manor Drive, Stroudsburg, PA 18360

8.      Defendant, Commonwealth of Pennsylvania Department of Transportation ("PennDOT"), is a governmental agency with its principal offices located at the Transportation and Safety Building, Harrisburg, Dauphin County, Pennsylvania and local offices located at 1586 North 9th Street, Stroudsburg, PA 18360.

9.      Defendant, Johnathan R. Wolf, is an adult individual currently residing at 218 East Fifth Street, Mifflinville, PA 18631 and is a citizen of the Commonwealth of Pennsylvania.

10.     Defendant, PennDOT John/Jane Doe Defendants, are unidentified adult individuals, owners, possessors, managers, controllers, operators, maintainers and road contractors of Routes 209 and 33 in Stroudsburg, PA.

## II.    JURISDICTION AND VENUE

11.     This Court has jurisdiction under sections 28 U.S.C. § 1343 and 28 U.S.C. § 1331 for violation of Plaintiff's Civil Rights and 28 U.S.C. § 1337 over Plaintiff's state law claims to recover damages for life threatening injuries.

12.     Venue is proper in the United States District Court for the Middle District of Pennsylvania under 28 U.S.C. Section 1391, as Monroe County is the county where the

accident occurred and/or where the parties reside and/or do business.

III.    FACTS

13.     At all times material hereto, the Monroe Defendants and PennDOT acted by and through their agents (actual, apparent or ostensible), servants, workmen, employees and/or officers, all of whom were then and there acting within the course and scope of their duties, agency, employment or authority for the Monroe Defendants and/or PennDOT..

14.     At all times material hereto, the individual Defendants acted within the course and scope of their duties, agency, employment or authority for the Monroe Defendants and/or PennDOT, respectively.

15.     At all times material hereto, the Monroe Defendants were responsible for final decision-making regarding MCCF policies and training, including but not limited to, MCCF policy to provide former inmates, like Plaintiff, at the time they are released from MCCF, with a free bus pass or prepaid debit card to pay for a cab or for other safe transportation, or to otherwise ensure safe transportation for former inmates at the time of their release from MCCF.

16.     Likewise, at all times material hereto, the Monroe Defendants were responsible for final decision-making regarding Warden Haidle, Officer Wilson and MCCF John/Jane Does well-settled courses of conduct and practices and/or customs, including but not limited to, Warden Haidle, Officer Wilson and MCCF John/Jane Does' well-settled course of conduct and practice and/or custom of failing and/or refusing to provide former inmates, like Plaintiff, at the time they are released from MCCF, with a free bus pass or prepaid debit card to pay for a cab or for other safe transportation, or to otherwise ensure safe transportation for former inmates at the time of their release from MCCF.

17.     On or about the early morning of August 26, 2018, Plaintiff was arrested by

Officer Daniel G. Knowles of the Stroudsburg Area Regional Police Department of Monroe County for public drunkenness.

18.     Shortly after his arrest, Plaintiff was transported to MCCF, where he was held in the custody of MCCF until his release later that night.

19.     In the course of Plaintiff's processing at MCCF, John/Jane Does MCCF Defendants became aware that Plaintiff was not a resident of Monroe County and that he in fact resided in Lancaster, Pennsylvania, which is a two (2) to three (3) hour drive from MCCF.

20.     Plaintiff was sentenced to time served and no part of his sentence included that, upon his release, he would have to walk on foot in the dark of night on unlit highways to arrive at a safe destination.

21.     On August 26, 2018, on or around 8:40 p.m., Plaintiff was released from MCCF and was escorted by Defendant Wilson and/or MCCF John/Jane Doe Defendants through the pedestrian gate.

22.     At no time prior to his release from custody, did Defendant Wilson and/or MCCF John/Jane Doe Defendants arrange for the safe transport of Plaintiff to a safe destination.

23.     At no time prior to his release, did Plaintiff consent to leaving MCCF without transportation.

24.     In fact, Defendant Wilson and MCCF John/Jane Doe Defendants knew or should have known that their decision and/or well-settled course of conduct, custom and/or practice of refusing to provide transportation to former inmates, including Plaintiff, who, upon release from MCCF, did not have any transportation to a safe destination, was inconsistent with MCCF official policy and their explicit duty as set forth in the MCCF Mission Statement, which is to uphold the constitutional rights of all inmates, including Plaintiff.

25.     Additionally, MCCF booking records indicate that Defendant Wilson affirmatively confirmed that Plaintiff did not have a ride and further confirm that neither Defendant Wilson nor MCCF John/Jane Doe Defendants provided, nor even offered to Plaintiff a means of transportation, including, but not limited to, a free bus pass or prepaid debit card to pay for a cab or other safe transport, or to otherwise ensure safe transportation for former inmates at the time of their release from MCCF, in contravention of MCCF official policy and/or procedure.

26.     Upon information and belief, at the time of his release from MCCF, Plaintiff was refused assistance in obtaining safe transportation by Wilson and/or MCCF John/Jane Doe Defendants and otherwise abandoned in the dark of night to travel on foot, in conscious disregard of foreseeable and obvious substantial risks of serious harm.

27.     According to MCCF records, at all times material hereto, Plaintiff did not have on his person eyeglasses, although he did have an empty eyeglass case, nor did Plaintiff have a mobile phone or any money.

28.     Upon information and belief, at no time did Plaintiff elect or agree or consent to leave MCCF without transportation to walk for miles in the dark of night across dangerous and unlit highways without his glasses or a flashlight or mobile phone or money.

29.     At all times material hereto, Plaintiff was overweight, suffered from severe near-sightedness, did not have the benefit of corrective eyeglasses on his person, and was not fit to walk any substantial distance, particularly in the dark.

30.     At all times material hereto, Plaintiff was in the custody and control of and/or recently released from the custody and control of the Monroe Defendants, Warden Haidle, Officer Wilson and/or MCCF John/Jane Doe Defendants.

31.     At all times material hereto, the Monroe County Defendants, Officer Wilson, Prison Board John/Jane Doe Defendants, Warden Haidle and MCCF John/Jane Doe Defendants adopted and executed an official policy and/or practice and/or well-settled course of conduct, custom and/or practice of abandoning former inmates upon release from MCCF with no transportation, phone call or money for cab/bus fare, or flashlight, thereby compelling them to walk along dangerous and poorly lit highways, often times at night, while threatening to arrest them for loitering and/or trespassing if they remained on MCCF grounds and/or walked on neighboring private residential property.

32.     On August 26, 2018, on or about 8:40 p.m., after being released by Officer Wilson and/or MCCF John/Jane Doe Defendants, and with no other alternative, Plaintiff, like other newly-released inmates in the past, was abandoned outside of MCCF in the dark of night with no means of transport other than his two feet.

33.     Upon information and belief Plaintiff, left between the proverbial "rock and a hard place", proceeded to walk from MCCF to Route 33 in the direction of Route 209, near Stroudsburg, PA, the only roadways near MCCF leading toward a safe destination.

34.     Upon information and belief, on August 26, 2018, after 10:00 p.m., Plaintiff was walking along Route 209, at or near Route 33, trying to flag down a car to take him to a safe destination.

35.     At all times material hereto, Routes 33 and 209 North were not illuminated by streetlights or any other source of artificial light, and did not provide any sidewalks or other designated areas for released former inmate pedestrians, such as Plaintiff, to safely walk without substantial risk of serious harm.

36.     On August 26, 2018, Defendant, Johnathan R. Wolf ("Wolf"), was the owner

7

and operator of a motor vehicle traveling North on Route 209 in Stroudsburg, PA at approximately 55 M.P.H.

37.    Upon information and belief, on August 26, 2018, at approximately 10:50 p.m., Plaintiff was walking North on Route 209, trying to get a vehicle driver's attention to ask for help, when he was struck by the vehicle owned and operated by Defendant Wolf, causing Plaintiff to be thrown through the air from his position on the highway, thereby sustaining serious and life-altering injuries.

38.    The roadways and/or topography in and around MCCF are such that a substantial risk of serious harm to Plaintiff and other similarly situated former inmates released from MCCF on foot was foreseeable, obvious and/or a matter of common sense.

39.    At all times material hereto, it was foreseeable to the Monroe Defendants, Warden Haidle, Officer Wilson, MCCF John/Jane Doe Defendants, and Prison Board John/Jane Doe Defendants that newly-released released former inmates, including Plaintiff, walking on foot in the dark, would need to cross 209 North, in order to reach a location where there was light generated from businesses and homes.

40.    At all times material hereto, Officer Wilson and/or MCCF John/Jane Defendants should have, but failed to, follow MCCF official policy and provide Plaintiff with a free bus pass or prepaid debit card to pay for a cab or other safe transport, or to otherwise ensure safe transportation for former inmates at the time of their release from MCCF.

41.    At all times material hereto, the Monroe Defendants and Parole Board John/Jane Doe Defendants were on notice that Warden Haidle, Officer Wilson and MCCF John/Jane Doe Defendants regularly failed to follow MCCF official policy and provide former inmates, like Plaintiff, at the time they are released from MCCF, with a phone call, free bus pass or prepaid

debit card to pay for a cab or other safe transportation, or to otherwise ensure safe transportation for former inmates at the time of their release from MCCF, thereby exposing said inmates to the foreseeable and obvious substantial risk of serious harm posed by walking on Routes 209 and/or 33.

42.     At all times material hereto, the Monroe Defendants and Parole Board John/Jane Doe Defendants were on notice that Warden Haidle and/or MCCF John/Jane Doe Defendants failed to adequately train Officer Wilson and MCCF John/Jane Doe Defendants about the substantial risk of serious harm to Plaintiff and other similarly situated former inmates when released from MCCF on foot, particularly at night, notwithstanding the foreseeable and obvious nature thereof.

43.     As such, at all times material hereto, the Monroe County Defendants, Prison Board John/Jane Doe Defendants, Warden Haidle, Officer Wilson and MCCF John/Jane Doe Defendants, were on notice of their inadequate and dangerous policies and/or well-settled courses of conduct, customs and/or adopted practices of releasing former inmates on foot without arranging safe and appropriate transportation from MCCF.

44.     At all times material hereto, Officer Wilson and/or MCCF John/Jane Doe Defendants should have but failed to otherwise take appropriate measures to ensure Plaintiff's safety after releasing him on foot from MCCF in the dark of night.

45.     At all times material hereto, the Monroe County Defendants, Officer Wilson, Prison Board John/Jane Defendants, Warden Haidle and MCCF John/Jane Doe Defendants were on notice that as a result of their official and/or adopted policies, and/or well-settled courses of conduct, customs and/or practices, former inmates released on foot had no alternative – other than threat of arrest for loitering and/or trespassing if they remained on MCCF grounds and/or walked on

9

neighboring private residential property -- but to walk an approximately eight (8) mile stretch of poorly lit highways that did not provide sidewalks, guardrails and/or other designated areas for pedestrians, such as Plaintiff, to walk without substantial risk of serious harm in order to reach a safe destination.

46.     At all times material hereto, the Monroe County Defendants, Prison Board John/Jane Doe Defendants and Warden Gary Haidle failed to address the documented problem arising from the well-settled course of conduct of Officer Wilson and MCCF John/Jane Doe Defendants releasing former inmates without providing them a safe means of transportation to avoid the substantial risk of serious harm resulting from being stranded outside MCCF and left to wander on foot on dangerous, poorly-lit highways.

47.     In fact, both Warden Haidle and the Monroe County Prison Board and/or Prison Board John/Jane Doe Defendants had actual knowledge of the MCCF official policy and/or well-settled course of conduct, practice and/or custom of abandoning former inmates upon release from MCCF with no transportation, phone call or money for cab/bus fare as reflected in local newspaper and/or television reports of neighbors complaining to the Warden and MCCF John/Jane Doe Defendants and/or Prison Board John/Jane Doe Defendants about "wandering released inmates" and the Prison Board vowing (as of May 2018) to address the problem at its next meeting.

48.     At all times material hereto, the Monroe County Defendants, Officer Wilson, Prison Board John/Jane Doe Defendants, Warden Haidle and MCCF John/Jane Doe Defendants created the dangerous situation Plaintiff was in, by adopting and executing an official policy and/or well-settled course of conduct, practice and/or custom of releasing former inmates, including Plaintiff, from MCCF in the dark of night, and thereafter abandoning former

inmates, including Plaintiff, with no transportation, thereby constraining them, and him, to walk along dangerous and poorly lit highways rather than taking additional measures to ensure the safety of former inmates, including Plaintiff.

49.     The official policy and/or well-settled course of conduct, practice and/or custom of the Monroe County Defendants, Officer Wilson, Prison Board John/Jane Doe Defendants, Warden Haidle and MCCF John/Jane Doe Defendants represents deliberate indifference to and/or reckless disregard of a foreseeable and obvious substantial risk of serious harm so as to violate Plaintiff's constitutional rights under the Fourteenth Amendment.

50.     Plaintiff's injuries resulted from the Monroe Defendants, Officer Wilson, Prison Board John/Jane Doe Defendants, Warden Gary Haidle and MCCF John/Jane Doe Defendants' creation of and/or deliberate indifference to and/or reckless disregard of a substantial risk of serious harm to Plaintiff caused by their official policy and/or well-settled course of conduct, practice and/or custom of releasing former inmates without providing them a means of transportation such that they were stranded outside MCCF and left to wander on foot in the dark, on dangerous, poorly-lit highways.

51.     In addition, Plaintiff's injuries resulted from PennDOT and PennDOT John/Jane Doe Defendants' grossly negligent creation and/or maintenance of dangerous, poorly-lit highways, devoid of guardrails and/or warnings and/or sidewalks or other designated areas for pedestrians, such as Plaintiff, to walk without substantial risk of serious harm.

52.     Plaintiff's injuries and accident were not due to any act of negligence on the part of Plaintiff.

## COUNT I - CIVIL RIGHTS - 42 U.S.C. § 1983

**Corbett v. County Of Monroe, Monroe County Prison Board, Prison Board John/Jane Doe Defendants (in their individual capacities), and Warden Gary Haidle, Officer Wilson and MCCF John/Jane Doe Defendants (in their individual capacities)**
**(Monell Claim)**

53.     Plaintiff hereby incorporates the preceding paragraphs as if same were set forth at length herein.

54.     At all times material hereto, the Monroe County Defendants, Prison Board John/Jane Doe Defendants and/or Warden Haidle are persons or entities that officially make, adopt and enforce policies and regulations and/or well-settled courses of conduct, customs and/or practices  and are responsible for the final decision making of official policies and training concerning MCCF, including, but not limited to, the release of inmates from MCCF.

55.     In particular, the Monroe County Defendants, Prison Board John/Jane Doe Defendants and/or Warden Haidle authorized and/or acquiesced in MCCF John/Jane Doe Defendants and Officer Wilson's official policy and/or well-settled courses of conduct, practice and/or custom of releasing inmates from MCCF without ensuring transportation for such former inmates to a safe destination, thereby subjecting the former inmates to walk many miles along dangerous and poorly lit highways, often at night, rather than taking additional, necessary measures to ensure their safety.

56.     At all material times hereto, the Monroe County Defendants, Prison Board John/Jane Doe Defendants and/or Warden Haidle knew or should have known from the public outcry and/or concern about MCCF's inmate release "policy", through their well-settled course of conduct, practice and/or custom, the result of which was "wandering released inmates" on neighboring properties, as reported in the local newspapers and on local television.

57.     At all material times hereto, the Monroe County Defendants,  Prison Board John/Jane Doe Defendants, Warden Haidle, Officer Wilson and MCCF John/Jane Doe Defendants knew or

should have known that their official policies and/or well-settled courses of conduct, customs and/or practices concerning the release of inmates from MCCF was dangerous and unconstitutional.

58.     The Monroe County Defendants, Prison Board John/Jane Doe Defendants and Warden Haidle participated and/or acquiesced in Officer Wilson and/or MCCF John/Jane Does' execution of said official policy and/or well-settled course of conduct, custom and/or practice when releasing Plaintiff, from MCCF custody without ensuring transportation, thereby constraining him to try to find his way to a safe destination on foot, in the dark of night, subjecting Plaintiff to walk many miles along dangerous and poorly lit highways, rather than taking additional measures to ensure his safety.

59.     At all times relevant hereto, as a result of  the Monroe County Defendants, Prison Board John/Jane Doe Defendants and Warden Gary Haidle's official policies and/or well-settled courses of conduct, customs and/or practices concerning the release of inmates from MCCF, Officer Wilson and/or other MCCF John/Jane Doe Defendants released Plaintiff from custody without ensuring he had transportation, even though it was late at night, thereby constraining Plaintiff to walk many miles along dangerous and poorly lit highways to try to find his way to a safe destination on foot, rather than taking additional measures to ensure his safety.

60.     At all times relevant hereto, the Monroe County Defendants,  Prison Board John/Jane Doe Defendants and Warden Haidle, created and/or adopted official policies, regulations, customs, decisions,  and/or adopted and/or acquiesced in well-settled courses of conduct, customs and/or practices regarding release of MCCF former inmates which were foreseeably and obviously  highly dangerous to the health and safety of Plaintiff and other released former inmates.

61.     At all times relevant hereto, the Monroe County Defendants, Prison Board John/Jane Doe Defendants and Warden Gary Haidle, / officially adopted and/or acquiesced in a

13

well-settled course of conduct, custom and practice of failing to instruct and/or train their agents, officers and/or employees to adhere to policies, procedures, regulations and/or customs that protect the welfare, health and safety of Plaintiff and other former inmates being released from MCCF custody.

62.    At all times relevant hereto, the Monroe County Defendants, Prison Board John/Jane Doe Defendants, Warden Gary Haidle, Officer Wilson and/or MCCF John/Jane Doe Defendants adopted an official policy and/or well-settled course of conduct, custom and/or practice of releasing former inmates such as Plaintiff, who did not have transportation to a safe destination, without providing them a means other than walking, which more likely than not, would be along Routes 33 and/or 209, dangerous, poorly lit roads with no sidewalks or similarly safe areas for pedestrian foot traffic, regardless of the time of day or weather conditions, thereby placing such released former inmates in obviously highly dangerous circumstances, rather than providing them an alternate, safe means of transportation.

63.    At all times relevant hereto, the Monroe County Defendants, Prison Board John/Jane Doe Defendants, Warden Gary Haidle, Officer Wilson and/or MCCF John/Jane Doe Defendants effectuated official policy and/or well-settled course of conduct, custom and practice with a willful and reckless disregard of, and/or a deliberate indifference to, the safety of Plaintiff with actual and/or constructive knowledge that such policy and practice placed Plaintiff in a foreseeable and obvious risk of substantial danger, including but not limited to, the danger of being hit by a vehicle driving at a substantial rate of speed on Routes 33 and/or 209, the nearby state highways devoid of adequate lighting or sidewalks or other safe pedestrian lanes, thereby depriving Plaintiff of his Fourteenth Amendment right to due process.

64.     Upon information and belief, given Plaintiff's severe nearsightedness, the absence of his eyeglasses and the absence of street lighting, that in the dark of night Plaintiff became visually confused as he was trying to hail a vehicle North on Route 209, approximately 455 feet from Route 33 on or about 10:50 p.m., just two (2) hours after his release, and just 2.9 miles from MCCF.

65.     Upon information and belief, as Plaintiff was crossing 209 North under the circumstances referenced above, vehicles were approaching him and, as he waved his arms to alert vehicles as to his presence, Plaintiff was struck by a motor vehicle operated by Defendant Wolf, causing serious and permanent injury as described hereinbelow.

66.     This accident was not caused in anyway by the carelessness or negligence of Plaintiff, who was clearly placed in a highly dangerous and desperate situation by the Monroe County Defendants, Prison Board John/Jane Doe Defendants, Warden Haidle, Officer Wilson and/or MCCF John/Jane Doe Defendants.

67.     Rather, this accident occurred as the result of official and/or unofficial policy, custom and/or practice of the Monroe County Defendants, Prison Board John/Jane Doe Defendants and Warden Gary Haidle, which was carried out when Officer Wilson and/or MCCF John/Jane Doe Defendants, adhering to Monroe County Defendants, Prison Board John/Jane Doe Defendants and Warden Haidle's policy and/or well-settled course of conduct, custom and/or practice, released Plaintiff from MCCF custody without providing any means of transportation to a safe destination, but rather abandoned him to walk along Routes 33 and/or 209, dangerous, poorly lit highways, with no guardrails in parts, and no sidewalks or similar areas for safe pedestrian foot traffic, regardless of the time of day or weather conditions, thereby resulting in a highly foreseeable risk of substantial danger to Plaintiff.

68.     At all times relevant hereto, the actions and/or omissions as described hereinabove by the Monroe County Defendants, Prison Board John/Jane Doe Defendants, Warden Gary Haidle, Officer Wilson and/or MCCF John/Jane Doe Defendants, evidence a deliberate indifference to the safety of Plaintiff and/or willingness to ignore a highly foreseeable and obvious risk of substantial danger to Plaintiff so as to deprive Plaintiff of his Fourteenth Amendment right to due process.

69.     There is a direct nexus between the harm suffered by Plaintiff and the policies, well-settled courses of conduct and practices of these defendants which resulted in the release of Plaintiff in the dark of night and, under threat of arrest for trespassing or loitering if he lingered on MCCF property or walked on neighboring private properties, constrained Plaintiff to walk at or near Routes 209 and 33 North, which for all the reasons described hereinabove and below, was highly dangerous and posed a foreseeable and obvious significant risk of physical harm to Plaintiff and similarly situated former MCCF inmates released without their own means of transportation.

70.     At all times relevant hereto, Plaintiff had a clearly established constitutional right to bodily integrity, safety, and welfare as secured by the Fourteenth Amendment of the United States Constitution and all related Civil Rights in this regard of which the Monroe County Defendants, Prison Board John/Jane Doe Defendants, Warden Gary Haidle, Officer Wilson and/or MCCF John/Jane Doe Defendants were clearly aware.

71.     The official policy and/or well-settled course of conduct, custom and/or practice carried out by the Monroe County Defendants, Prison Board John/Jane Doe Defendants, Warden Haidle, Officer Wilson and/or MCCF John/Jane Doe Defendants resulted in a violation of Plaintiff's right to due process under the Fourteenth Amendment of the United States

Constitution.

72.     At all times relevant hereto, the Monroe County Defendants, Prison Board John/Jane Doe Defendants, Warden Haidle, Officer Wilson and/or MCCF John/Jane Doe Defendants, either jointly or severally, acting themselves or through their agents, knowingly created and/or initiated and/or executed and/or acquiesced in an official policy and/or well-settled course of conduct, custom and/or practice which clearly violated Plaintiff's substantive due process rights to bodily integrity, safety, and welfare as secured by the Fourteenth Amendment of the United States Constitution and all related Civil Rights in this regard, as fully detailed hereinbelow.

73.     At all times relevant hereto, Officer Wilson, Warden Haidle, MCCF John/Jane Doe Defendants and Prison Board John/Jane Doe Defendants' actions evidence a deliberate indifference to the safety of Plaintiff and/or willingness to ignore a highly foreseeable and obvious risk of substantial danger to Plaintiff so as to deprive Plaintiff of his Fourteenth Amendment right to due process and were so outrageous as to be shocking to the conscience of any court.

74.     As such, Plaintiff requests an award of punitive and/or exemplary damages against  Officer Wilson, Warden Haidle, MCCF John/Jane Doe Defendants and Prison Board John/Jane Doe Defendants at time of trial.

**WHEREFORE,** Plaintiff, Brandon Corbett, by and through his Power of Attorney, Louis Corbett, demands judgment against the Monroe County Defendants, Prison Board John/Jane Doe Defendants, Warden Gary Haidle, Officer Wilson and/or MCCF John/Jane Doe Defendants jointly and/or severally,  for compensatory damages in a sum in excess of Seventy-Five Thousand Dollars ($75,000.00), together with interest, attorneys' fees and costs of suit.

WHEREFORE, Plaintiff, Brandon Corbett, by and through his Power of Attorney,

Louis Corbett, further requests an award of punitive and/or exemplary damages against Defendants Officer Wilson, Warden Haidle, MCCF John/Jane Doe Defendants and Prison Board John/Jane Doe Defendants based on these Defendants ongoing disregard for the rights of Plaintiff, which conduct was so outrageous as to be shocking to the conscience of any Court.

## COUNT II - CIVIL RIGHTS - 42 U.S.C. § 1983
### Corbett v. County Of Monroe, Prison Board John/Jane Doe Defendants, Warden Gary Haidle, Officer Wilson and MCCF John/Jane Doe Defendants (in their individual capacities)
### (State Created Danger)

75.     Plaintiff hereby incorporates the preceding paragraphs as if same were set forth at length herein.

76.     At all times relevant hereto, the Monroe County Defendants, Prison Board John/Jane Doe Defendants, Warden Haidle, Officer Wilson and/or MCCF John/Jane Doe Defendants knew or should have known and/or were deliberately indifferent to these defendants' unsafe practice of releasing former inmates, such as Plaintiff, without any means of transportation to a safe destination, as described hereinabove.

77.     At all times material hereto, as a result of releasing Plaintiff, a former inmate, from MCCF without transportation, particularly in the dark of night, it was a highly foreseeable, essentially obvious risk to the Monroe County Defendants, Prison Board John/Jane Doe Defendants, Warden Haidle, Officer Wilson and/or MCCF John/Jane Doe Defendants, that Plaintiff could and/or would be struck by a car after being abandoned by these defendants and constrained to walk along Routes 33 and/or 209, dangerous, poorly lit highways, with no sidewalks or similar areas for safe pedestrian foot traffic.

78.     The policies, well-settled courses of conduct and actions of the Monroe County

Defendants, Prison Board John/Jane Doe Defendants, Warden Haidle, Officer Wilson and/or MCCF John/Jane Doe Defendants which subjected Plaintiff to the risk and danger that caused his accident and injuries – i.e., releasing Plaintiff from MCCF without transportation, particularly in the dark of night, thereby constraining him to walk along Routes 33 and/or 209, dangerous, poorly lit highways, with no sidewalks or similar areas for safe pedestrian foot traffic – are outrageous and shocking to the conscience of a reasonable person.

79.     At all times material hereto, a relationship existed between the Monroe County Defendants, Prison Board John/Jane Doe Defendants, Warden Haidle, Officer Wilson and/or MCCF John/Jane Doe Defendants and Plaintiff such that Plaintiff was a foreseeable victim of these defendants' policies and/or actions and/or deliberate indifference.

80.     At all times material hereto, Plaintiff, as a just-released former inmate of MCCF, is a member of a discrete class of persons subjected to the potential harm brought about by the policies and/or well-settled courses of conduct, actions and/or deliberate indifference of the Monroe County Defendants, Prison Board John/Jane Doe Defendants, Warden Haidle, Officer Wilson and/or MCCF John/Jane Doe Defendants, as described hereinabove, as opposed to a member of the public in general.

81.     Rather than ensuring the safe transport of Plaintiff to a safe destination upon his release from MCCF in the dark of night, the Monroe County Defendants, Prison Board John/Jane Doe Defendants, Warden Haidle, Officer Wilson and/or MCCF John/Jane Doe Defendants chose to use their authority in a way that created a danger to Plaintiff such that he was rendered more vulnerable to danger than had these Defendants not acted at all.

82.     At all times relevant hereto, the injuries and damages sustained by Plaintiff were a foreseeable and direct result of the acts and/or omissions of the Monroe County

Defendants, Prison Board John/Jane Doe Defendants, Warden Gary Haidle, Officer Wilson and/or MCCF John/Jane Doe Defendants in causing a state created danger.

83.     At all times relevant hereto, the actions and/or omissions of the Monroe County Defendants, Prison Board John/Jane Doe Defendants, Warden Haidle, Officer Wilson and/or MCCF John/Jane Doe Defendants as described hereinabove, in releasing Plaintiff from MCCF without any means of transportation, in the dark of night, and in circumstances in which these officials had time to make unhurried judgments, were a clear violation of Plaintiff's constitutional rights and MCCF's own Mission Statement, and evidence a willingness and/or deliberate indifference to the foreseeable and obvious substantial danger and/or risk of harm to Plaintiff created by these defendants' actions and/or omissions.

84.     At all times relevant hereto, the actions and/or omissions of the Monroe County Defendants, Prison Board John/Jane Doe Defendants, Warden Gary Haidle, Officer Wilson and/or MCCF John/Jane Doe Defendants as described hereinabove, were performed with a willful and reckless disregard of and/or a deliberate indifference to the safety of Plaintiff so as to deprive Plaintiff of his Fourteenth Amendment right to due process.

85.     The policies and/or well-settled courses of conduct, actions and/or willful misconduct of the Monroe County Defendants Prison Board John/Jane Doe Defendants,  Warden Haidle, Officer Wilson and/or MCCF John/Jane Doe Defendants as described hereinabove and to be adduced upon completion of discovery, resulted in a state created danger that directly led to the violation of Plaintiff's right to due process under the Fourteenth Amendment of the United States Constitution, as fully detailed hereinbelow.

86.     At all times relevant hereto, Officer Wilson, Warden Haidle, MCCF John/Jane Doe Defendants and Prison Board John/Jane Doe Defendants' actions and/or omissions

represented deliberate indifference to and reckless disregard of the dangerous conditions which they created, causing severe and significant injury to Plaintiff, demonstrated these Defendants' ongoing disregard for the rights of persons such as Plaintiff, and were so outrageous as to be shocking to the conscience of any court.

87.     As such, Plaintiff requests an award of punitive and/or exemplary damages against Officer Wilson, Warden Haidle, MCCF John/Jane Doe Defendants and Prison Board John/Jane Doe Defendants at time of trial.

**WHEREFORE,** Plaintiff, Brandon Corbett, by and through his Power of Attorney, Louis Corbett, demands judgment against the Monroe County Defendants, Prison Board John/Jane Doe Defendants, Warden Haidle, Officer Wilson and/or MCCF John/Jane Doe Defendants, jointly and/or severally, for compensatory damages in a sum in excess of Seventy-Five Thousand Dollars ($75,000.00), together with interest, attorneys' fees and costs of suit.

WHEREFORE, Plaintiff, Brandon Corbett, by and through his Power of Attorney, Louis Corbett, further requests an award of punitive and/or exemplary damages against Officer Wilson, Warden Haidle, MCCF John/Jane Doe Defendants and Prison Board John/Jane Doe Defendants based on these defendants' ongoing disregard for the rights of Plaintiff, which conduct was so outrageous as to be shocking to the conscience of any court.

### COUNT III – STATE LAW CLAIM/GROSS/WANTON NEGLIGENCE/ NEGLIGENT SUPERVISION
**Corbett v. Warden Haidle, Officer Wilson and MCCF John/Jane Doe Defendants (In Their Individual Capacity)**

88.     Plaintiff hereby incorporates the preceding paragraphs as if same were set forth at length herein.

89.     Section 8550 of the Pennsylvania Tort Claims Act, entitled "Willful

Misconduct" states that:

> In any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of employee caused the injury and that such acts constituted a crime, actual fraud, actual malice or willful misconduct, the individual loses his or her immunity.

90.     At all times material hereto, the actions and inactions of Defendants Warden Haidle, Officer Wilson and/or MCCF John/Jane Doe Defendants amounted to extreme and reckless indifference of and/or willful indifference to the rights of Plaintiff insofar as these defendants were substantially certain and/or aware that Plaintiff would be exposed to great danger and serious physical injury when he was released from MCCF without transportation, particularly in the dark of night, thereby abandoned and constrained to walk along Routes 33 and/or 209, dangerous, poorly lit highways, with no sidewalks or similar areas for safe pedestrian foot traffic.

91.     Given that Defendants Warden Haidle, Officer Wilson and/or MCCF John/Jane Doe Defendants have no immunity, they are subject to common law torts, including negligence and negligent supervision. McNeal v. City of Easton, 143 Pa. Commonwealth Ct. 151 (1991).

92.     The willful misconduct of, and extreme and reckless indifference to the dangerous conditions which were created by, Defendants Warden Haidle, Officer Wilson and/or MCCF John/Jane Doe Defendants include, but are not limited to, the following:

> a)   Releasing Plaintiff from MCCF on foot, particularly in the dark of night, without providing or offering a phone call, bus fare, a prepaid debit card or other means of safe transportation in contravention of MCCF official policy to provide a bus pass or prepaid debit card to pay for a cab or for other safe transportation;
> b)   Releasing Plaintiff from MCCF on foot, particularly in the dark of night, it was substantially certain and/or obvious to these defendants that Plaintiff would be exposed to great danger of serious physical injury as he was essentially abandoned and constrained to walk along Routes 33 and/or 209, dangerous, poorly lit highways, with no sidewalks or similar areas for safe pedestrian foot traffic;
> c)   Creating a dangerous situation by releasing Plaintiff from MCCF on foot, in the dark of night, without his eyeglasses, mobile phone or any money, to walk a substantial distance on unlit, unsafe highways that did

22

not provide any sidewalks or other designated areas for pedestrians, such as Plaintiff, to safely walk to a safe destination; and

d) Any and all acts of deliberate indifference to the substantial risk of serious harm to Plaintiff as the result of the actions and/or omissions of these defendants to be determined upon completion of discovery.

93.    As a direct and proximate result of the willful misconduct of, and extreme and reckless indifference to the dangerous conditions which were created by, Defendants Warden Haidle, Officer Wilson and/or MCCF John/Jane Doe Defendants, Plaintiff has sustained severe and multiple injuries, both internal and external, to and about his body, and extremities with injury to his bones, joints, nerves and nervous system, including, but not limited to: trauma patient in a coma med-evac to trauma hospital, traumatic brain injury, subarachnoid and right ventricular hemorrhage, subdural hemorrhage, multiple maxillofacial fractures, right occipital bone fracture, fractured orbital wall, cranial fractures, fracture of the anterior wall of left external auditory canal, insertion of feeding tube, bilateral sacral ala fractures, fractured right femur, acute kidney injury, extensive surgical and rehabilitative treatment, short-term memory loss, adjustment disorder, cognitive communication deficit, tonic pupil, severe CNS trauma, compromised vision, extensive headaches, permanent scarring and disfigurement, along with embarrassment and humiliation.

94.    As a further result of the willful misconduct of, gross negligence, extreme and reckless indifference to the dangerous conditions which were created by, Defendants Warden Haidle, Officer Wilson and/or MCCF John/Jane Doe Defendants, Plaintiff has undergone great physical pain and suffering, mental distress and anguish and he will continue to endure same in the future, to his great detriment and loss.

95.    As a further result of the willful misconduct of, gross negligence, extreme and reckless indifference to the dangerous conditions which were created by, Defendants Warden Haidle, Officer Wilson and/or MCCF John/Jane Doe Defendants, Plaintiff has suffered a loss and

depreciation of his earnings and earning power and will continue to suffer such loss and depreciation in the future, to his great detriment and loss.

96.     As a further result of the willful misconduct of, gross negligence, extreme and reckless indifference to the dangerous conditions which were created by, these defendants, Plaintiff has been unable to attend to his usual and daily duties and occupation, and he will be unable to attend to same in the future, to his great detriment and loss.

97.     As a further result of the willful misconduct of, gross negligence, extreme and reckless indifference to the dangerous conditions which were created by, Defendants Warden Haidle, Officer Wilson and/or MCCF John/Jane Doe Defendants, Plaintiff has been compelled to expend large sums of money for medicine and medical attention in and about an effort to affect a cure for his aforesaid injuries, and he will be obligated to continue to expend large sums of money for the same purpose in the future for pain relieving medications and treatments and surgical interventions.

98.     Defendants Warden Haidle, Officer Wilson and/or MCCF John/Jane Doe Defendants' actions of willful misconduct, gross negligence, extreme indifference and reckless disregard of the dangerous conditions which they created, causing severe and significant injury to Plaintiff, demonstrated these Defendants' ongoing disregard for the rights of Plaintiff and were so outrageous as to be shocking to the conscience of any court.

99.     As such, Plaintiff requests an award of punitive and/or exemplary damages against Defendants Warden Haidle, Officer Wilson and/or MCCF John/Jane Doe Defendants at time of trial.

**WHEREFORE,** Plaintiff, Brandon Corbett, by and through his Power of Attorney, Louis Corbett, demands judgment against Defendants Warden Haidle, Officer Wilson and/or MCCF John/Jane Doe Defendants for compensatory damages in a sum in excess of Seventy-

Five Thousand Dollars ($75,000.00), together with interest and costs of suit.

WHEREFORE, Plaintiff, Brandon Corbett, by and through his Power of Attorney, Louis Corbett, further requests an award of punitive and/or exemplary damages against Defendants Officer Wilson, Warden Haidle and MCCF John/Jane Doe Defendants based on these Defendants' ongoing disregard for the rights of Plaintiff which was so outrageous as to be shocking to the conscience of any court.

### COUNT IV - NEGLIGENCE AND EXCEPTIONS TO SOVEREIGN IMMUNITY 42 Pa.C.S. § 8522 (b)(4)
**Corbett v. Commonwealth Of Pennsylvania Department Of Transportation and PennDOT John/Jane Doe Defendants (fictitious names for the owners, possessors, managers, controllers, operators, maintainers and road contractors of Route 209 in Stroudsburg, PA)**

100.     Plaintiff hereby incorporates the preceding paragraphs as if same were set forth at length herein.

101.     At all times material hereto, Defendants PennDOT and PennDOT John/Jane Doe Defendants (collectively, the "PennDOT Defendants") were aware that PA Route 209 at or near PA Route 33 was a dangerous roadway due to the proliferation of motor vehicles accidents at this location caused by defects of and about the roadway as further addressed hereinbelow.

102.     At all times material hereto, the PennDOT Defendants were aware that inmates were being released from MCCF and would customarily walk onto Route 209 because they were not permitted to remain on prison grounds after their release and the policy and practice at MCCF was to release former inmates who had no transportation of their own without taking any reasonable measures to ensure they had transportation to a safe destination.

103.     The aforesaid accident was in part caused by the negligence, carelessness and/or

recklessness of the PennDOT Defendants, jointly and/or severally, acting as aforesaid, which

negligence, carelessness and/or recklessness consisted, *inter alia*, of the following:

(a)   creating a hazardous and/or dangerous condition on Route 209 by failing to install adequate lighting to illuminate the area of the accident;

(b)   failing to warn that Route 209 was not properly illuminated at the area of the accident with signage, barriers and/or the use of flood lights in order to illuminate the area to view pedestrians in and about the roadway given the history of wandering inmates released from MCCF in and/around the locale;

(c)   failing to install a reflective strip or painted lines in the travel lanes that would guide drivers and further illuminate pedestrians in the area given the history of wandering inmates released from MCCF in and/around the locale;

(d)   failing to take necessary safety precautions to illuminate the roadway such that the driving area was not visible and pedestrians in the area of the road way could not be seen given the history of wandering inmates released from MCCF in and/around the locale;

(e)   failing to install temporary flood lights which were needed to illuminate the area of the accident such that inmates released from MCCF could be seen on and about the roadway;

(f)   failing to place a barrier, sign, guardrails and/or warning devices in the form of signage and/or roadway markings on the shoulder of Route 209 to alert drivers and pedestrians of the existence of the unlit roadway given the history of wandering inmates released from MCCF in and/around the locale;

(g)   failing to install a sign to warn vehicles to yield to pedestrians given the history of wandering inmates released from MCCF in and/around the locale;

(h)   allowing a dark roadway which was at all times hazardous and dangerous to exist such that pedestrian, including, but not limited to, recently released former inmates could not be seen at or on the roadway;

(i)   failing to install sidewalks with barriers for pedestrian travel due to the presence of inmates released from MCCF on or about the roadway;

(i)   failing to inspect and failing to establish a policy of inspection for Route 209 given the history of wandering inmates released from MCCF in and/around the locale;

(j)   failing to undertake or complete a study with a proper consultant to determine how to improve the illumination of Route 209 at the area of the accident given the history of wandering inmates released from MCCF in and/around the locale;

(k)   Failing area to respond to complaints regarding the dark nature of Route 209 at the site of the accident in question or at other areas such that a

full inspection should have been warranted given the history of wandering inmates released from MCCF in and/around the locale;

(m)    failing to maintain Route 209 in a safe manner such that accidents involving cars and pedestrians would be reduced given the history of wandering inmates released from MCCF in and/around the locale;

(n)    failing to hire a consultant to ensure Route 209 was not dangerous and a hazard to persons such as the Plaintiff because of darkness, absence of lighting and no sidewalk for pedestrian traffic given the history of wandering inmates released from MCCF in and/around the locale;

(o)    failing to hire and/or consult a streets' expert to manage, inspect, repair, design and maintain the Route 209 in a safe condition for motorists and pedestrians given the history of wandering inmates released from MCCF in and/around the locale;

(p)    failing to hire and/or consult a lighting safety expert to ensure Route 209 was properly illuminated;

(q)    failing to illuminate the aforesaid roadway despite notice and knowledge that same has constituted a threat of harm to motorists and pedestrians for a foreseeable time prior to the date of this accident;

(r)    acting in a manner that was negligent in failing to inspect, maintain, design, manage, repair and/or construct Route 209;

(s)    violating applicable ordinances and property maintenance codes of Monroe County;

(t)    failing to take the aforementioned actions despite having actual or constructive knowledge that prisoners and/or detainees were being released from MCCF with no means of transportation and thereby were routinely walking along this dangerous, dark stretch of highway on Route 209; and

(u)    such other acts of negligence as may be adduced through discovery or at trial.

104.    As the direct and proximate result of the PennDOT Defendants' joint and/or several negligent, careless and/or reckless acts and/or omissions, Plaintiff sustained severe and multiple injuries, both internal and external, to and about his body, and extremities with injury to his bones, joints, nerves and nervous system, including, but not limited to: trauma patient in a coma med-evac to trauma hospital, traumatic brain injury, subarachnoid and right ventricular hemorrhage, subdural hemorrhage, multiple maxillofacial fractures, right occipital bone fracture, fractured orbital wall, cranial fractures, fracture of the anterior wall of left external auditory canal, insertion of feeding tube, bilateral sacral ala fractures, fractured right

femur, acute kidney injury, extensive surgical and rehabilitative treatment, short-term memory loss, adjustment disorder, cognitive communication deficit, tonic pupil, severe CNS trauma, compromised vision, extensive headaches, permanent scarring and disfigurement, along with embarrassment and humiliation.

105.     As a further result of the negligence of the PennDOT Defendants, Plaintiff has undergone great physical pain and suffering, mental distress and anguish and he will continue to endure same in the future, to his great detriment and loss.

106.     As a further result of the negligence of the PennDOT Defendants, Plaintiff has suffered a loss and depreciation of his earnings and earning power and will continue to suffer such loss and depreciation in the future, to his great detriment and loss.

107.     As a further result of the negligence of the PennDOT Defendants, Plaintiff has been unable to attend to his usual and daily duties and occupation, and he will be unable to attend to same in the future, to his great detriment and loss.

108.     As a further result of the negligence of the PennDOT Defendants , Plaintiff has been compelled to expend large sums of money for medicine and medical attention in and about an effort to affect a cure for his aforesaid injuries, and he will be obligated to continue to expend large sums of money for the same purpose in the future for pain relieving medications and treatments and surgical interventions.

109.     The PennDOT Defendants' actions of extreme indifference and reckless disregard of the dangerous conditions which they created, causing severe and significant injury to Plaintiff, demonstrated Defendants ongoing disregard for the rights of persons such as Plaintiff and were outrageous so as to be shocking to the conscience of any court.

110.     As such, Plaintiff requests an award of punitive and/or exemplary damages

against the PennDOT Defendants at time of trial.

**WHEREFORE,** Plaintiff, Brandon Corbett, by and through his Power of Attorney, Louis Corbett, demands judgment against Defendants, Commonwealth of Pennsylvania Department of Transportation and Pennsylvania Department of Transportation John/Jane Doe Defendants, jointly and/or severally, for compensatory damages in a sum in excess of Seventy-Five Thousand Dollars ($75,000.00), together with interest and costs of suit.

## COUNT V - NEGLIGENCE
### Corbett v. Wolf

111.    Plaintiff hereby incorporates the preceding paragraphs as if same were set forth at length herein.

112.    The aforesaid accident was in part caused by the negligence, carelessness and/or recklessness of Defendant, Johnathan R. Wolf , acting as aforesaid, which negligence, carelessness and/or recklessness consisted, <u>inter alia,</u> of the following:

    (a)    failing to properly operate said vehicle;

    (b)    failing to be attentive;

    (c)    failing to apply his breaks sufficiently in time to avoid an accident;

    (d)    failing to properly calculate distance of vehicle with respect to pedestrians on the road;

    (e)    failing to drive at a reasonable speed;

    (f)    failing to remain in a single lane;

    (g)    failing to be aware of pedestrians, such as Plaintiff, on the roadway;

    (h)    failing to remain in control of his vehicle;

    (i)    failing to use all prudent and necessary care for vehicular travel under the circumstances;

    (j)    violating applicable sections of Title 75 and/or ordinances and codes for the Commonwealth of Pennsylvania and such other statutes and case law governing the operation of motor vehicles on the streets and highways; and

    (k)    such other acts of negligence, carelessness, and/or recklessness as may be adduced through discovery or at trial.

113.     As the direct and proximate result of Defendant Wolf's negligence, Plaintiff sustained severe and multiple injuries, both internal and external, to and about his body, and extremities with injury to his bones, joints, nerves and nervous system,  including, but not limited to: trauma patient in a coma med-evac to trauma hospital, traumatic brain injury, subarachnoid and right ventricular hemorrhage, subdural hemorrhage, multiple maxillofacial fractures, right occipital bone fracture, fractured orbital wall, cranial fractures, fracture of the anterior wall of left external auditory canal, insertion of feeding tube, bilateral sacral ala fractures, fractured right femur, acute kidney injury, extensive surgical and rehabilitative treatment short-term memory loss, adjustment disorder, cognitive communication deficit, tonic pupil, severe CNS trauma, compromised vision, extensive headaches, permanent scarring and disfigurement, along with embarrassment and humiliation.

114.     As a further result of the negligence of Defendant Wolf, Plaintiff has undergone great physical pain and suffering, mental distress and anguish and he will continue to endure same in the future, to his great detriment and loss.

115.     As a further result of the negligence of Defendant Wolf, Plaintiff has suffered a loss and deprecation of his earnings and earning power and will continue to suffer such loss and depreciation in the future, to his great detriment and loss.

116.     As a further result of the negligence of Defendant Wolf, Plaintiff has suffered a loss and deprecation of his earnings and earning power and will continue to suffer such loss and depreciation in the future, to his great detriment and loss.

117.     As a further result of the negligence of Defendant Wolf, Plaintiff has been unable to attend to his usual and daily duties and occupation, and  he will be unable to attend to same in the future, to his great detriment and loss.

118.    As a further result of the negligence of Defendant, Plaintiff has been compelled to expend large sums of money for medicine and medical attention in and about an effort to affect a cure for his aforesaid injuries, and he will be obligated to continue to expend large sums of money for the same

purpose in the future for pain relieving medications and treatments and surgical interventions.

**WHEREFORE,** Plaintiff, Brandon Corbett, by and through his Power of Attorney, Louis Corbett, demands judgment against Defendant, Johnathan R. Wolf, jointly and/or severally, for compensatory damages in a sum in excess of Seventy-Five Thousand Dollars ($75,000.00), together with interest and costs of suit.

**COOPER SCHALL & LEVY**

CHARLES S. COOPER, ESQUIRE
Attorney for Plaintiff
2000 Market Street, Suite 1400
Philadelphia, PA 19103
T: (215)561-3313

Dated: October 27, 2020

## CERTIFICATE OF SERVICE

I hereby certify that on this date, all counsel of record were served with this pleading via ECF.

**COOPER SCHALL & LEVY**

_____
CHARLES S. COOPER, ESQUIRE

October 27, 2020